# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. 1:17sw **728** |
| Apple Phone, Model A1429 | ) | |
| IMEI: 013352006144899 | ) | |
| | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A (incorporated by reference).

located in the _____ Eastern _____ District of _____ Virginia _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 924(c) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime |
| 18 U.S.C. § 922(g)(1) | Felon in Possession for a Firearm |
| 21 U.S.C. § § 841, 846 | Conspiracy to Distribute Controlled Substances |

The application is based on these facts:
See attached affidavit of Michael A. Fernald, ATF Special Agent.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael A. Fernald,  ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 10/27/2017 _____

_____ /s/ _____ **JFA**
John F. Anderson
United States Magistrate Judge
*Judge's signature*

City and state: Alexandria, Virginia

The Honorable John F. Anderson, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

The property to be searched is listed below and currently located at the ATF Falls Church

II Evidence Locker at 7799 Leesburg Pike, Falls Church, Virginia 22043:

| Device # | Make | Model | Identifier |
|---|---|---|---|
| 1 | Apple | A1660 iPhone | 497aa174cd92ca290f929b3a93e19e09ab2e79ba |
| 2 | Apple | A1453 iPhone | IMEI: 352032066676898 |
| 3 | Apple | A1429 iPhone | IMEI: 013352006144899 |
| 4 | Apple | A1387 iPhone | IMEI: 013201005031819 |

This warrant authorizes the forensic examination of the Devices for the purpose of

identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.      All records on the Devices described in Attachment A that relate to violations of

Title 21, United States Code, Sections 841(a)(1) and 846, Title 18, United States Code, Sections

924(c), and 922(g)(1), and involve Jorge Lozada, Jr., including:

        a.  Any conversations, whether through text messages or other applications, where

            Jorge Lozada discusses controlled substances or firearms;

        b.  lists of customers and related identifying information;

        c.  types, amounts, and prices of drugs trafficked as well as dates, places, and

            amounts of specific transactions;

        d.  any information related to sources of drugs (including names, addresses, phone

            numbers, or any other identifying information);

        e.  any information related to sources or purchases of firearms;

        f.  any photographs or videos of controlled substances or firearms;

        g.  any information recording Jorge Lozada's schedule or travel from December 2016

            to the date phones came into law enforcement's possession; and

        h.  all bank records, checks, credit card bills, account information, and other financial

            records.

2.      Evidence of user attribution showing who used or owned the Devices at the time

the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

saved usernames and passwords, documents, and browsing history.

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>Apple iPhone<br>Model A1429<br>IMEI: 013352006144899<br><br>CURRENTLY LOCATED AT<br>ATF Falls Church II Evidence Locker<br>7799 Leesburg Pike,<br>Falls Church, Virginia 22043 | 1:17-sw-728 |

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH

I, Michael A. Fernald, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from those devices of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been since 2014. I am trained as a Digital Media Collection Specialist with ATF and have experience and training in obtaining data from electronic devices, including cellular and multimedia devices. I also have experience investigating narcotics and firearms trafficking offenses as well as searching electronic devices for evidence of narcotics and firearms trafficking offenses.

3.     Based on my training and experience, and the experience of other law enforcement officers, in investigating narcotics and the distribution of narcotics while armed, I know that it is common for individuals engaged in this activity to use telephonic communications, both cellular (to include voice and text messages) and hard line, to further their criminal activities. I know that "smart" phones play an integral role in the daily lives of individuals engaging in narcotics trafficking and that these individuals use cellular telephones to exchange information with customers and/or source(s) of supply through text messaging, instant messaging, and telephone conversations. I also know that it is common for narcotics traffickers to use multiple "smart" phones to communicate with co-conspirators in order to compartmentalize their illegal activity and avoid detection by law enforcement. Further, I know it is common for narcotics traffickers to change their phones and phone numbers in order to avoid detection by law enforcement.

4.     The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from federal and state law enforcement officers, and information obtained from interviews and analysis of reports.

5.     This affidavit contains information necessary to support probable cause. The information contained in this affidavit is not intended to include each and every fact and matter observed by me or known to the government.

6.     Based on my training and experience and the facts as set forth in this affidavit, I submit that there is probable cause to believe that JORGE LOZADA, JR. ("LOZADA") has committed violations of Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year), Title 18, United States Code, Section 924(c) (possession of a firearm

2

in furtherance of a drug trafficking crime), and Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute and possess with the intent to distribute marijuana and other controlled substances). There is also probable cause to search the electronic devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

7.    The property to be searched is listed below (hereinafter referred to as "the Devices"). The Devices are currently located in the ATF Falls Church II evidence locker, which is located at 7799 Leesburg Pike, Falls Church, Virginia 22043, within the Eastern District of Virginia. The Devices are listed in the below table. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

| Device # | Make | Model | Identifier |
|----------|------|-------|------------|
| 1 | Apple | A1660 iPhone | 497aa174cd92ca290f929b3a93e19e09ab2e79ba |
| 2 | Apple | A1453 iPhone | IMEI: 352032066676898 |
| 3 | Apple | A1429 iPhone | IMEI: 013352006144899 |
| 4 | Apple | A1387 iPhone | IMEI: 013201005031819 |

8.    The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

A.    Background on the Investigation

9.    In July of 2016, ATF began investigating the activities of armed narcotics dealers operating in and around Prince William County, Virginia, which is located within the Eastern

District of Virginia. To date, this investigation has resulted in the successful prosecution of a number of individuals for narcotics and firearms related offenses.

10. On January 6, 2017, an individual ("CI-1") reported six (6) firearms stolen. CI-1 reported purchasing the firearms at All Shooters Tactical, which is a federal firearms licensee located in Woodbridge, Virginia, which is within the Eastern District of Virginia, on December 28, 2016. After reviewing surveillance footage of the sale, law enforcement observed LOZADA's brother ("Co-Conspirator 1") providing U.S. currency to CI-1 just prior to CI-1 purchasing the firearms. Based on my experience in investigating firearms offenses, I know this behavior to be consistent with the straw purchase of firearms.

11. As a result, law enforcement officers confronted CI-1, who initially denied purchasing the firearms for another person, but then confessed he purchased the firearms for Co-Conspirator 1. CI-1 further stated he purchased the firearms with U.S. currency that Co-Conspirator 1 provided to him. Co-Conspirator 1 was a juvenile at the time and therefore cannot purchase firearms from federal firearms licensees. When pressed by law enforcement, CI-1 further admitted that he purchased marijuana from Co-Conspirator 1 in the past. CI-1 consented to a law enforcement search of his phone, which revealed that CI-1 had been purchasing marijuana from Co-Conspirator 1 on almost a daily basis.

B. Controlled Purchase of Marijuana from Jorge Lozada on March 21, 2017

12. On or about March 16, 2017, CI-1 contacted Co-Conspirator 1 and ordered a quantity of marijuana. CI-1 agreed to meet Co-Conspirator 1 at a location in Woodbridge. When CI-1 arrived, Co-Conspirator 1 was with LOZADA. During the transaction, LOZADA informed CI-1 that he was now in the cocaine business.

4

13.     On or about March 17, 2017, CI-1 received a video sent from LOZADA's phone of what appears to be cocaine in a Pyrex dish. LOZADA informed CI-1 that he would sell "Quaps for 750" and told CI-1 to "Shop."

14.     On or about March 21, 2017, CI-1 contacted LOZADA and ordered one ounce of cocaine. LOZADA informed CI-1 that he had already sold out of cocaine and only had marijuana left. CI-1 agreed to purchase an ounce of marijuana from LOZADA and they agreed to meet in Woodbridge.

15.     Prior to the transaction, CI-1 was searched and found to be free of any illegal contraband. CI-1 was provided with documented ATF agent cashier funds and was driven to the transaction by a Prince William County Police Department ("PWCPD") detective, who was acting in an undercover capacity.

16.     LOZADA arrived to the meeting location in a vehicle. CI-1 provided LOZADA with $180 in documented cashier funds and in return LOZADA provided him with approximately 28 grams of suspected marijuana (which later field-tested positive). CI-1 informed LOZADA to contact him when he had cocaine again for sale. After the transaction, CI-1 provided the purchased marijuana to law enforcement. CI-1 was searched again and found to be free of any illegal contraband. The transaction was audio and video recorded.

C.     Controlled Purchase of Cocaine from Jorge Lozada on March 22, 2017

17.     On March 22, 2017, ATF coordinated the purchase of cocaine from LOZADA. Prior to the transaction, Co-Conspirator 1 went live from his Instagram account and one of the accounts viewing this live feed is known to be used by LOZADA. During the live feed, Co-Conspirator 1 is observed smoking a marijuana blunt and weighing marijuana on a digital scale. While weighing the marijuana, Co-Conspirator 1 asks someone where the joint is located.

5

Shortly thereafter, Co-Conspirator 1 is handed a black pistol with a laser beam and a high-capacity transparent magazine loaded with ammunition. In the live feed, Co-Conspirator 1 placed the firearm in his lap next to the digital scale while continuing to weigh marijuana.

18.     Prior to the transaction, CI-1 and the vehicle were searched and found to be free of any illegal contraband. CI-1 was provided with documented ATF agent cashier funds. When CI-1 arrived in the area of the transaction, he contacted LOZADA on his telephone and informed him he was on scene. LOZADA reported he would be right out and was observed by law enforcement exiting the same apartment Co-Conspirator 1 was known to reside in.

19.     LOZADA entered CI-1's vehicle and LOZADA informed CI-1 that he could step on the cocaine he purchased and make 100 grams out of it. LOZADA reported he had zips (ounces) all day. CI-1 provided LOZADA with the $1,500 in documented cashier funds and in return, LOZADA provided CI-1 with cocaine.

20.     After the transaction, CI-1 provided the purchased cocaine to law enforcement. CI-1 was searched again and found to be free of any illegal contraband. The transaction was audio and video recorded. The purchased cocaine was submitted to the Drug Enforcement Administration ("DEA") Mid-Atlantic Laboratory and was determined to be over 31 grams of cocaine hydrochloride.

D.     Controlled Purchase of Cocaine from Jorge Lozada on March 30, 2017

21.     On or about March 30, 2017, ATF coordinated the purchase of cocaine from LOZADA. During this transaction, CI-1 was instructed to order a quantity of cocaine and attempt to introduce an ATF special agent, who was acting in an undercover capacity ("UC-1").

22.     Prior to the transaction, CI-1, UC-1, and UC-1's vehicle were searched and found to be free of any illegal contraband. CI-1 was provided with documented ATF agent cashier

funds. When CI-1 arrived in the area of the transaction, he contacted LOZADA on his telephone and informed him he was on scene. LOZADA was observed by law enforcement exiting his apartment and approaching UC-1's vehicle. Initially, LOZADA and CI-1 met outside of UC-1's vehicle, then they both got into the vehicle.

23.     CI-1 introduced UC-1 to LOZADA. CI-1 provided LOZADA with the $1,150 in documented cashier funds and in return LOZADA pulled out a bag containing cocaine and a scale. LOZADA weighed out the cocaine, then provided it to CI-1. During this transaction, LOZADA informed UC-1 that he uses drugs on a daily basis.

24.     After the transaction, CI-1 provided the purchased cocaine to law enforcement. CI-1 was searched again and found to be free of any illegal contraband. The transaction was audio and video recorded. The purchased cocaine was submitted to the DEA Mid-Atlantic Laboratory and was determined to be over 27 grams of cocaine hydrochloride.

E.     Controlled Purchase of Cocaine from Jorge Lozada on April 11, 2017

25.     On or about April 11, 2017, ATF coordinated the purchase of cocaine from LOZADA. During this transaction, CI-1 was instructed to order a quantity of cocaine and allow UC-1 to conduct the transaction.

26.     Prior to the transaction, CI-1, UC-1, and UC-1's vehicle were searched and found to be free of any illegal contraband. UC-1 was provided with documented ATF agent cashier funds. When CI-1 arrived in the area of the transaction, he contacted LOZADA on his telephone and informed him he was on scene. LOZADA was observed by law enforcement pulling into Ashdale Plaza in Woodbridge. CI-1 greeted LOZADA and informed him that UC-1 had the money. LOZADA exited his vehicle and entered UC-1's vehicle.

7

27.     UC-1 provided LOZADA with the $1,150 in documented cashier funds and in return LOZADA pulled out a bag containing cocaine and provided it to UC-1.

28.     After the transaction, UC-1 provided the purchased cocaine to law enforcement. The transaction was audio and video recorded. The purchased cocaine was submitted to the DEA Mid-Atlantic Laboratory and was determined to be over 27 grams of cocaine hydrochloride.

F.     Instagram Account LOTHEFAMOUSAHK

29.     During the course of this investigation, law enforcement used an undercover law enforcement account to view LOZADA's known Instagram account. Below, I detail some of the posts that I observed, which support that LOZADA was involved in a conspiracy to distribute controlled substances.

30.     On April 15, 2017, I observed LOZADA posted a photograph of marijuana in a cup to his account.

31.     On May 16, 2017, I observed a video posted by LOZADA to his account of him holding a Glock pistol with a drum magazine inserted. LOZADA has been convicted of two crimes for which he faced more than one year imprisonment. LOZADA is therefore prohibited from possessing firearms.

32.     On May 17, 2017, I observed LOZADA post a video of himself to his account waving a black Glock pistol with an extended transparent magazine containing ammunition (consistent with a firearm seized by law enforcement on September 8, 2017).

33.     On May 22, 2017, the Honorable Theresa Carroll Buchanan, Magistrate Judge for the Eastern District of Virginia signed a search warrant for LOZADA's Instagram account. The warrant was executed by ATF on the same date.

8

34.    In the data returned from Facebook (owner of Instagram) there was information related to LOZADA selling marijuana, cocaine, and Xanax prescription pills. Below, I detail some of the posts that I observed, which support that LOZADA was involved in a conspiracy to distribute controlled substances.

35.    On March 1, 2017, LOZADA posted a photograph to his Instagram account of "blue cookies" (marijuana) and reported he would sell an ounce for $200 and a half-ounce for $100.

36.    On March 23, 2017, LOZADA posted a photograph to his Instagram account of "They goin fast" with multiple bottles of promethazine with cough syrup regularly, which I know is referred to as "lean." On March 24, 2017, he posted the same picture with "Who Need Em?"

37.    On May 4, 2017, LOZADA posted a photograph to his Instagram account of "$170 a zip" while holding marijuana in his hand.

38.    On May 5, 2017, LOZADA posted a photograph to his Instagram account of "180 a zip" again holding marijuana in his hand.

G.    Instagram Posts Observed By Law Enforcement Since June 2017

39.    Below, I detail some of the posts that I observed while using an undercover law enforcement account, which support that LOZADA continues to be involved in a conspiracy to distribute controlled substances.

40.    On June 4, 2017, I observed LOZADA post a live video to his Instagram account of himself holding a Glock pistol with a transparent magazine containing ammunition (consistent with a firearm seized by law enforcement on September 8, 2017).

9

41.     On July 31, 2017, I observed LOZADA post a live video to his Instagram account in which he is counting U.S. currency onto a bed with a black pistol laying on the bed.

42.     On August 10, 2017, I observed LOZADA post a video to his Instagram account in which there are bottles of promethazine with cough syrup and the caption, "I got 10 left Come get Em." The next portion of the video is a box containing over 20 bottles of the Schedule V controlled substance.

43.     On August 22, 2017, I observed LOZADA post a photograph to his Instagram account of marijuana with a caption of "Gas back On Deck."

44.     On September 7, 2017, I observed LOZADA post a photograph to his Instagram account stating, "Insha Allah We Bout to Turn Tf Up On Yal #DirtyReligion #Kutthroat" with U.S. currency spread out and a Glock pistol with a transparent magazine containing ammunition (consistent with a firearm seized by law enforcement on September 8, 2017).

H.      Snapchat Account LOTHEFAMOUSAHK

45.     On August 16, 2017, the Honorable John F. Anderson, Magistrate Judge for the Eastern District of Virginia, authorized a search warrant for Tyus Terrell's Snapchat account (1:17sw509). Upon reviewing the return from Snapchat, I observed that LOZADA and Terrell's Snapchat account were in contact. Below, I summarize some of the relevant communications.

46.     I know LOZADA to use the SUBJECT ACCOUNT because I observed via an undercover law enforcement account both videos and photographs of LOZADA posted to the SUBJECT ACCOUNT. In addition, the account name is the same vanity as his known Instagram account. As stated above, LOZADA also shared a photograph of his Snapchat profile on August 23, 2017 to his Instagram account. The photograph shows both his Snapchat vanity name "Racked Up" and the account name "lothefamousahk."

10

47.     On April 8, 2017, LOZADA and Terrell discuss the sale of marijuana. In this conversation, LOZADA informs Terrell that "Because you looked out for me the best I can do for the gelato 200 a zone all the way up and it's gasss."

48.     On April 10, 2017, LOZADA sent Terrell a photograph of plastic bags containing Percocet prescription pills, Xanax prescription pills, and ecstasy (MDMA) pills, with the caption, "Percs zans epills wat you want."

49.     On May 2, 2017, LOZADA sent Terrell a photograph of marijuana in his hand.

50.     On May 9, 2017, LOZADA sent Terrell a video of marijuana in his hand.

51.     On May 23, 2017, LOZADA and Terrell discussed a "Gun store by mall called quantified tactics." I believe this is a reference to Quantico Tactical.

I.      Arrest of Jorge Lozada on September 8, 2017

52.     On or about September 8, 2017, the United States Marshals Service located LOZADA at an address on Filarete Street in Woodbridge, Virginia, within the Eastern District of Virginia. LOZADA was wanted for a probation violation in the Commonwealth of Virginia.

53.     After observing LOZADA enter the address on Filarete Street, law enforcement entered the residence to execute LOZADA's arrest. Upon taking LOZADA into custody, law enforcement observed in plain view illegal contraband. This included, but was not limited to, a black plate containing a white powdery substance consistent with cocaine, a digital scale with a white powdery substance on it consistent with cocaine, Inositol powder (a common cutting agent for cocaine) and packaging materials. As a result, PWCPD personnel obtained a search warrant for the residence.

54.     In the bedroom where LOZADA was located by himself and arrested, law enforcement located and seized a Glock 9mm pistol, an extended transparent magazine loaded

11

with ammunition, approximately 120 grams of a substance that field tested positive for the presence of cocaine, approximately 22 grams of suspected marijuana, and $1,718. The firearm, extended magazine, and ammunition were consistent with the firearm displayed on LOZADA's Instagram account (as discussed above).

55.     Law enforcement interviewed the tenant of the room, who reported they provided LOZADA with a key to the house on September 7, 2017, and permitted LOZADA to spend the night. The tenant denied having any illicit contraband in the room or having any information about where the controlled substances were located.

56.     Based upon my training and experience, I know the Glock pistol to be a firearm as that term is defined under Title 18, United States Code, Section 921(a)(3).

57.     The SUBJECT PHONES were located and seized from the bedroom where LOZADA was arrested. The phones are described as follows:

    a.   Black Apple iPhone model A1660, UDID:

       497aa174cd92ca290f929b3a93e19e09ab2e79ba;

    b.   White Apple iPhone model A1453, IMEI: 352032066676898;

    c.   Gold Apple iPhone model A1429, IMEI: 013352006144899; and

    d.   White Apple iPhone model A1387, IMEI: 013201005031819.

58.     Of the above-described phones, I examined the phones and their Subscriber Identity Modules (SIM). Only one of the phones appeared to have a Verizon Wireless SIM card installed, the black Apple iPhone model A1660 with UDID: 497aa174cd92ca290f929b3a93e19e09ab2e79ba. Based on my training and experience, it is common for drug distributors to have more than one phone to conduct their illicit business. Many dealers will use different phones for customers, sources, and family and friends. In

addition, LOZADA was alone in the residence at the time of his arrest. And, while it is possible that another person or persons left the residence without taking their phones, this is unlikely. While agents cannot guarantee all phones are owned or used by LOZADA, the only way to determine this information is to access the Devices and search them. Agents will discontinue searching a phone if they determine that LOZADA did not use the phone in question.

59.     The Devices are currently in storage at 7799 Leesburg Pike, Falls Church, Virginia 22043, Virginia, which is located within the Eastern District of Virginia. In my training and experience, I know that the Devices have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the ATF.

60.     After a search warrant is obtained for the Devices, ATF or FBI will begin the search of the Devices within the Eastern District of Virginia. If ATF or FBI cannot complete the search then agents will send the Devices to a private company that specializes in data extraction from Apple iPhones and other electronics. This private company will either (a) unlock the Devices and then return the Devices to the ATF or FBI office located in the Eastern District of Virginia, where the actual analysis of the contents of the Devices will take place or (b) unlock the Devices and create a forensic image of the Devices, and then return the Devices to the ATF or FBI office located in the Eastern District of Virginia, where the actual analysis of the contents of the Devices will take place.

## TECHNICAL TERMS

61.     Based on my training and experience, I use the following technical terms to convey the following meanings:

13

e. *Wireless telephone*: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

f. *Digital camera*: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images.

14

This storage media can contain any digital data, including data unrelated to photographs or videos.

g. *Portable media player*: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

h. *GPS*: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

15

to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

i.  *PDA*: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

j.  *Internet*: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

62.  Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http://www.apple.com/iphone/, I know that the Devices have capabilities that allow them to serve as the following: a wireless telephone, digital camera, portable media player, GPS

16

navigation device, and PDA. In my training and experience, examining data stored on smart phones can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

63. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

64. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

65. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

     a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

     b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

     c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

17

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

66.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

67.  *Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

18

## **CONCLUSION**

68.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Devices described in Attachment A to seek the items

described in Attachment B.

Respectfully submitted,

Michael Fernald
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me on October 27, 2017:

_____/s/_____
John F. Anderson
The Honorable John F. Anderson
United States Magistrate Judge

19

## ATTACHMENT A

The property to be searched is listed below and currently located at the ATF Falls Church II Evidence Locker at 7799 Leesburg Pike, Falls Church, Virginia 22043:

| Device # | Make | Model | Identifier |
|----------|------|-------|------------|
| 1 | Apple | A1660 iPhone | 497aa174cd92ca290f929b3a93e19e09ab2e79ba |
| 2 | Apple | A1453 iPhone | IMEI: 352032066676898 |
| 3 | Apple | A1429 iPhone | IMEI: 013352006144899 |
| 4 | Apple | A1387 iPhone | IMEI: 013201005031819 |

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.     All records on the Devices described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1) and 846, Title 18, United States Code, Sections 924(c), and 922(g)(1), and involve Jorge Lozada, Jr., including:

       a.   Any conversations, whether through text messages or other applications, where Jorge Lozada discusses controlled substances or firearms;

       b.   lists of customers and related identifying information;

       c.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

       d.   any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

       e.   any information related to sources or purchases of firearms;

       f.   any photographs or videos of controlled substances or firearms;

       g.   any information recording Jorge Lozada's schedule or travel from December 2016 to the date phones came into law enforcement's possession; and

       h.   all bank records, checks, credit card bills, account information, and other financial records.

2.     Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

21